**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND COALITION AGAINST DOMESTIC VIOLENCE *et al.*,<br><br>               *Plaintiffs*,<br><br>        v.<br><br>PAMELA BONDI, *et al.*,<br><br>               *Defendants*. | Case No. 1:25-cv-00279 |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND RELIEF UNDER 5 U.S.C. § 705**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

   I.    This Court Has Jurisdiction ........................................................................... 2

   II.   The Plaintiffs Are Likely to Succeed On the Merits of Their Claims ............................... 6

      A.  Plaintiffs' APA claims are likely to succeed. ........................................................ 6

         1.    The new Funding Conditions are subject to APA review........................................... 6

            a.  Plaintiffs challenge final agency action. ........................................................ 6

            b.  The Funding Conditions are not committed to agency discretion by law. ........... 10

         2.    The Funding Conditions violate the APA........................................................... 13

            a.  The Funding Conditions exceed Defendants' statutory authority and several are contrary to law. ........................................................................................... 13

            b.  The Funding Conditions are arbitrary and capricious........................................... 17

      B.  Plaintiffs' First Amendment claims are likely to succeed. ........................................... 20

      C.  Plaintiffs' Fifth Amendment claims are likely to succeed........................................... 22

      D.  Plaintiffs' separation-of-powers claims are likely to succeed. .................................... 26

   III.   The Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief ...................... 27

   IV.   The Balance of the Equities and Public Interest Favors Preliminary Relief................. 29

   V.    Relief Should Extend Broadly Enough To Prevent Any Irreparable Harm. .................. 30

   VI.   The Court Should Deny Defendants' Request For a Stay and Bond ............................ 32

CONCLUSION.................................................................................................................. 33

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) .............................. 20

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, No. 25-1611, – F.4th – ,

    2025 WL 2017106 (1st Cir. July 18, 2025) ................................................................... 5

*Anaria Cabrera v. U.S. Dep't of Labor*, slip op. at 16-17 (D.D.C. July 25, 2025) ..................... 31

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) ................................................................. 5

*Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) ........................................... 8

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................... 6, 8

*Bridgeport Hosp. v. Becerra*, 108 F.4th 882 (D.C. Cir. 2024) ...................................... 31

*California v. Dep't of Transp.*, No. 25-CV-208-JJM-PAS,

    2025 WL 1711531 (D.R.I. June 19, 2025) .................................................................. 6

*Career Colls. & Schs. of Tex. v. Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024) ........................... 30

*CASA de Maryland, Inc. v. Trump*, 145 S.Ct. (2025) .................................................. 31

*City of Los Angeles v. Sessions*, No. 18-cv-7347,

    2019 WL 1957966 (C.D. Cal. 2019) ....................................................................... 32

*New York v. United States Dep't of Health & Hum. Servs.*,

    414 F. Supp. 3d 475 (S.D.N.Y. 2019) .................................................................... 12

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ................................ 27

*Chi. Women in Trades v. Trump*, No. 25 C 2005,

    2025 WL 1114466 (N.D. Ill. Apr. 14, 2025) .......................................................... 6, 24

*Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167 (D.C. Cir. 2004) ................................ 9

*City & Cnty. of S.F. v. Sessions*, 349 F. Supp. 3d 924 (N.D. Cal. 2018) ....................................... 8

*City of Chi. v. Sessions*, 321 F. Supp. 3d 855, 865–66 (N.D. Ill. 2018) ....................................... 6

*City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421 (D.C. Cir. 1994) ..................... 28

*City of Phila. v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017) ..................................... 28

*City of Phila. v. Sessions*, 309 F. Supp. 3d 271 (E.D. Pa. 2018) ..................................... 8

*City of Providence v. Barr*, 954 F.3d 23 (1st Cir. 2020) ............................................... 14

*City of Taunton, Massachusetts v. EPA*, 895 F.3d 120 (1st Cir. 2018) ...................................... 19

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025)............................................................ 2

*Cnty of King v. Turner*. No. 25-3664 (9th Cir. July 8, 2025) ................................... 5, 6

*Corner Post v. Bd. of the Fed. Resrv. Sys.*, 603 U.S. 799 (2024) ……………………....31, 32

*Dalton v. Specter*, 511 U.S. 462 (1994)................................................................ 27

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)................................................ 10

*Dep't of Com. v. New York,* 942 F.3d 512 (D.C. Cir. 2019)................................ 19

*Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) ...................................... passim

*DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020)........................... 19

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005)................................... 3

*Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992)................................ 18

*Harris Cnty., Texas v. Kennedy*, 2025 WL 1707665 (D.D.C. June 17, 2025).......................... 3, 4

*Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460 (1980) ............................... 2

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995)................................... 3

*Lincoln v. Vigil*, 508 U.S. 182 (1993)........................................................... 12, 13

*Louisiana v. Biden*, 622 F. Supp. 3d 267 (E.D. La. 2022)................................. 18

*Lummi Tribe of the Lummi Rsrv., Wash. v. United States*, 870 F.3d 1313 (Fed. Cir. 2017) .......... 3

*Markey v. United States*, 27 Fed. Cl. 615, 620–621 (1993)................................ 3

*Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814,
2025 WL 1582368 (W.D. Wash. June 3, 2025)......................................... passim

*Massachusetts v. Nat'l Insts. of Health*, 770 F.Supp.3d 277 (D. Mass. 2025) ..................... 28, 30

*Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 36 (D.D.C. 2025) ................................... 18

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) ................................ 20, 23

*Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167 (D.D.C. 1971) ................................... 32

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ...................... 31

*New York v. Kennedy*, No. 25-CV-196-MRD-PAS,
2025 WL 1803260 (D.R.I. July 1, 2025) ............................................ 33

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025)......................................... 6, 7

*Norton v. Southern Utah Wilderness All.*, 542 U.S. 55 (2004)............................ 7

*Ohio v. EPA*, 603 U.S. 279 (2024)................................................................ 17

iii

*Orr v. Trump*, No. 1:25-cv-10313, 2025 WL 1145271 (D. Mass. Apr. 18, 2025) ...................... 30

*Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218 (2016)..................................................... 18

*Planned Parenthood of Wis., Inc. v. Azar*, 316 F. Supp. 3d 291 (D.D.C. 2018) ........................... 9

*R.I. Latino Arts v. Nat'l Endowment for the Arts*, No. 1:25- cv-00079,

    2025 WL 1009026 (D.R.I. Apr. 3, 2025).................................................................................. 21

*Rattlesnake Coal. v. EPA*, 509 F.3d 1095 (9th Cir. 2007)........................................................... 13

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017)............................................................................. 25

*Reno v. ACLU*, 521 U.S. 844 (1997).............................................................................................. 23

*San Francisco AIDS Foundation v. Trump*, --- F. Supp. 3d ----,

    2025 WL 1621636 (N.D. Cal. June 9, 2025) ................................................................... passim

*S.F. Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC,

    2025 WL 1180729 (N.D. Cal. Apr. 23, 2025) ................................................................. 3, 6, 11

*Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282 (Fed. Cir. 2010) ........................... 18

*Sessions v. Dimaya*, 584 U.S. 148 (2018)..................................................................................... 23

*Soscia Holdings, LLC v. Gray*, 725 F. Supp. 3d 156 (D.R.I. 2024) ............................................ 29

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................................................ 26

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)................................................................ 5

*Tootle v. Sec'y of Navy*, 446 F.3d 167 (D.C. Cir. 2006) ................................................................ 3

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,

    579 U.S. 176, 192 (2016) ........................................................................................................ 22

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982)............................. 24

*Webster v. Doe*, 486 U.S. 592 (1988) ..................................................................................... passim

*Wong v. Warden*, 171 F.3d 148 (2d Cir. 1999)............................................................................. 11

*Woonasquatucket River Watershed Council v. USDA*,

    No. 1:25-CV-00097, 2025 WL 1116157 (D.R.I. Apr. 15, 2025)................................. 18, 31, 32

**Statutes**

5 U.S.C. § 701(a)(2)....................................................................................................................... 10

5 U.S.C. § 705 ................................................................................................................................ 30

5 U.S.C. § 706 ................................................................................................................................ 31

28 U.S.C. § 1491(a)(1)................................................................................................................. 2, 3

34 U.S.C. § 10450 ............................................................................................................ 11

34 U.S.C. § 10441(b)–(c) ................................................................................................. 11

34 U.S.C. § 10442(b), ...................................................................................................... 12

34 U.S.C. § 10444(8) ....................................................................................................... 13

34 U.S.C. § 10446 ............................................................................................................ 11

34 U.S.C. § 10454(3) ....................................................................................................... 11

34 U.S.C. § 12291 .......................................................................................... 11, 12, 14, 17

34 U.S.C. §12464 ............................................................................................................. 11

34 U.S.C.  20121 ............................................................................................................. 11

34 U.S.C. §  20123 ...................................................................................................... 11, 17

34 U.S.C. § 20124 ............................................................................................................ 11

**Rules**

Fed. R. App. P. 8(a) ......................................................................................................... 32

**Regulations**

28 C.F.R. § 90.4(c) ........................................................................................................... 17

**Other Authorities**

Exec. Order 14151, 90 Fed. Reg. 12345 (Feb. 15, 2025) .............................................. 15

Exec. Order 14173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ................................................ 15

Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025) ......................................... 14

William Baude et al., Hart and Wechsler's *The Federal Courts and the Federal System*

   (8th ed. 2025) .............................................................................................................. 4

# INTRODUCTION

Absent this Court's intervention, the Department of Justice's Office on Violence Against Women imminently will subject organizations dedicated to helping domestic violence and sexual assault victims to vague and otherwise unlawful funding conditions that threaten these organizations' lifesaving work. None of Defendants' arguments in opposition to Plaintiffs' motion for preliminary injunction are convincing.

The Tucker Act has no application here at all, for the simple reason none of the claims relate to any contracts that have been entered. The claims all relate to requirements that Defendants are imposing on Plaintiffs and their members as conditions to apply for, and to be eligible to receive, grants. Plaintiffs' claims thus are not founded upon any contract, do not allege a breach of any contract, and do not seek to enforce or compel performance of any contract.

Defendants further try to hide behind APA threshold barriers, but the unlawful Funding Conditions are final agency action—Defendants made a final decision to impose those conditions, and they control what grantees may do with the funds and expose them to False Claims Act liability. And far from committing grant conditions to agency discretion, Congress has enacted detailed provisions governing the grant programs. Defendants also have no discretion to violate constitutional rights. On the merits, Defendants fail to rebut Plaintiffs' showing that the Funding Conditions exceed the agency's statutory authority or are otherwise contrary to law and that the Funding Conditions are arbitrary and capricious.

The Funding Conditions also are constitutionally infirm. Defendants aim to subject disfavored speech to crippling civil and criminal penalties, and have crafted vague prohibitions to ensnare grantees in their False Claims Act trap. Moreover, the Executive Branch has

abrogated congressional authority under the Spending Clause to set funding conditions, violating the separation of powers.

The stakes are high and time is short. The Court should enter a stay and a preliminary injunction setting aside the Funding Conditions and preventing Defendants from interfering with the critical work that Plaintiffs and their members perform for survivors of domestic violence and sexual assault and their communities.

## I.    This Court Has Jurisdiction

The Tucker Act does not strip this Court of jurisdiction over Plaintiffs' claims. *Contra* Defs.' Opp'n at 13. Plaintiffs' claims are not in "essence" contractual given that Plaintiffs do not allege any breach of contract, but instead allege constitutional and statutory violations. But as a threshold matter, the Tucker Act simply cannot apply here for three different reasons.

*First*, the Tucker Act cannot possibly apply because Plaintiffs have only applied for a grant or have otherwise not entered an agreement. The Tucker Act only provides jurisdiction over contract-related claims that are "founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Supreme Court has held that this plain text means that the Tucker Act does not apply where there is no "actual contract." *Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460, 465 n.5 (1980). There is no "actual contract" where, as here, Plaintiffs have only applied for a grant or have not entered a grant agreement. Defendants assert that "the source of the rights Plaintiffs assert are the grant agreements themselves," Defs.' Opp'n at 14, but there are no "grant agreements themselves" in these instances.

*Second*, this Court should join the many courts that have "categorically rejected the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Cmty. Legal Servs. in E. Palo Alto v. Dep't of*

*Health & Hum. Servs.*, 137 F.4th 932, 939 (9th Cir. 2025) (quoting *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006)).[1] Simply put, "there cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Id.* The Court of Federal Claims has jurisdiction under 28 U.S.C. § 1491(a)(1) only over claims for damages for breach of contract (described above), or for violations of a constitutional or statutory provision that is "money-mandating," meaning the provision entitles a particular entity to a particular amount of money without strings attached. *See Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

None of the constitutional and statutory provisions that Plaintiffs rely on here are money-mandating. The Federal Circuit has held that the First Amendment, the Due Process Clause, and the separation of powers are not money-mandating. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). The Spending Clause is not either. *S.F. Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC, 2025 WL 1180729, at *9 (N.D. Cal. Apr. 23, 2025). Neither the APA nor the provisions of VAWA providing for discretionary grant programs are money mandating, *see id.*, and the Federal Circuit has held that even statutes providing formula grants are not money-mandating where, as here, the grants come with "strings attached" (*e.g.*, restrictions on the purposes for which the funds can be used). *Lummi Tribe of the Lummi Rsrv., Wash. v. United States*, 870 F.3d 1313, 1319 (Fed. Cir. 2017). Thus, the Court of Federal Claims would lack jurisdiction over all of Plaintiffs' claims, and this Court cannot "be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle*, 446 F.3d at 176.

---

[1] *See also Harris Cnty., Texas v. Kennedy*, No. 25-CV-1275 (CRC), 2025 WL 1707665, at *6 (D.D.C. June 17, 2025); *Thakur v. Trump*, No. 25-CV-04737-RFL, 2025 WL 1734471, at *19 (N.D. Cal. June 23, 2025); *Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 134 (D.D.C. 2023),

*Third*, this Court's jurisdiction over Plaintiffs' *constitutional* claims is especially clear under binding Supreme Court precedent. In *Webster v. Doe*, 486 U.S. 592 (1988), the Supreme Court imposed a clear-statement rule where the government argues that a statute deprives a party of any forum to assert a constitutional claim. *Id.* at 603 ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."). As described above, Plaintiffs could not assert their constitutional claims in the Court of Federal Claims (and the government does not suggest they could). Because the Tucker Act contains no clear statement stripping district courts of jurisdiction over grant-related constitutional claims, that is dispositive under *Webster*. Were it otherwise, and "*no* court would have jurisdiction over constitutional claims that happen to involve a contract," then "no court would have jurisdiction over a claim that the government rescinded contracts on the basis of protected traits like race, religion, or sex," *Harris Cnty.*, 2025 WL 1707665, at *6. That cannot be right.

Indeed, this Court must have jurisdiction over the constitutional claims to avoid rendering the Tucker Act itself unconstitutional. *Webster* required a "heightened showing" for these circumstances "in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." 486 U.S. at 603. The Supreme Court has *never* read a statute to preclude all judicial review of a constitutional claim, to "avoid squarely facing" the "serious constitutional question" that such a statute would present. William Baude et al., Hart and Wechsler's *The Federal Courts and the Federal System* 462 (8th ed. 2025).

In all events, if this Court did evaluate whether Plaintiffs' claims are in "essence" contractual, Defs.' Opp'n at 14, they clearly are not. Defendants cite a two-part test from the D.C. Circuit for assessing whether the Tucker Act impliedly strips district courts of jurisdiction

4

over certain claims. That test, to the extent it applies (*but cf. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023),[2] settles any doubt about this court's jurisdiction. "[T]he source of Plaintiffs' rights resides in statutes and the Constitution, not in any contractual provisions in the Grant Agreements." *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814, 2025 WL 1582368, at *9 (W.D. Wash. June 3, 2025) (rejecting Tucker Act defense in challenge to grant conditions). Plaintiffs do not seek to enforce any contractual term and do not allege any breach of contract. Instead, they seek to enforce their constitutional rights and the terms of the relevant statutes that Congress enacted, including the APA and VAWA.

The relief that Plaintiffs seek is not contractual either. Plaintiffs do not seek "past due sums," but rather request declaratory and injunctive relief "that is unavailable in the Court of Federal Claims." *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, No. 25-1611, – F.4th – , 2025 WL 2017106, at *6 (1st Cir. July 18, 2025). The fact that Plaintiffs do not ask for an order compelling any payment of money "alone[] is sufficient to render the Tucker Act inapplicable." *Turner*, 2025 WL 1582368, at *10. And unlike in *Department of Education v. California*, 145 S. Ct. 966 (2025), Plaintiffs do not request that the Court order reinstatement of grants and do not otherwise seek "to enforce a contractual obligation to pay money." *Id.* at 968. Rather, Plaintiffs seek to enjoin Defendants from coercing Plaintiffs and their members into making unlawful certifications or agreeing to unlawful conditions, in order to be *eligible* for an award.

In these circumstances, it is no surprise that, in every other challenge to similar conditions that agencies are imposing on funding recipients, the courts have concluded that the

---

[2] In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Supreme Court set forth a test for whether "[a] special statutory review scheme" "implicitly" "preclude[s] district courts from exercising jurisdiction over challenges to federal agency actions." *Axon*, 598 U.S. at 185. Plaintiffs' claims are properly in district court under that test, because they are not "of the type" Congress intended to be reviewed in the Court of Federal Claims. *Id.* at 186 (quotations omitted).

Tucker Act does not deprive district courts of jurisdiction over the claims. *See California v. Dep't of Transp.*, No. 25-CV-208-JJM-PAS, 2025 WL 1711531, at *1 (D.R.I. June 19, 2025); *King Cnty.*, 2025 WL 1582368, at *9; *S.F. Unified Sch. Dist. v. AmeriCorps*, 2025 WL 1180729, at *9-11; *Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 1114466, at *8 (N.D. Ill. Apr. 14, 2025). Indeed, in its appeal of one of the injunctions that has been entered against certifications, the government has entirely dropped the Tucker Act argument from its appeal. *See* Gov't Br., *King Cnty. v. Turner*. No. 25-3664 (9th Cir. July 8, 2025).

**II.    The Plaintiffs Are Likely to Succeed On the Merits of Their Claims**

**A.  Plaintiffs' APA claims are likely to succeed.**

Plaintiffs are likely to prevail on their claims that the new Funding Conditions must be set aside under the APA. Contrary to Defendants' contentions, they are subject to APA review, and they fail that review for multiple independent reasons.

*1.    The new Funding Conditions are subject to APA review.*

Contrary to Defendants' contention, Defs.' Opp'n at 17–20, the new Funding Conditions are subject to APA review because they reflect final agency actions not committed to agency discretion by law.

*a.  Plaintiffs challenge final agency action.*

There can be no serious dispute that Plaintiffs challenge "final agency actions." Under the APA, a plaintiff must challenge "discrete" agency actions, and those actions must be "final" in that: (1) they "mark[] the consummation of the agency's decisionmaking process," and (2) they determine "rights or obligations" or "legal consequences will flow" from them. *New York v. Trump*, 133 F.4th 51, 67 (1st Cir. 2025) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Here, Plaintiffs challenge three sets of discrete agency actions: (1) OVW's policy decision to impose the Out-of-Scope Funding Conditions on all OVW grants; (2) OVW's imposition of the Out-of-Scope Funding Conditions on each of the specific grants programs for which Plaintiffs have already applied or wish to apply; and (3) the addition of the General Anti-DEI Certification Requirement to OVW's General Terms and Conditions. Each of these agency actions are discrete and final.

Regarding discreteness, each of the challenged actions reflect specific "decisions" that Defendants made and that Plaintiffs seek to have set aside. *New York*, 133 F.4th at 67. Plaintiffs' challenges to these actions do not represent a "broad programmatic attack" that "seek[s] 'wholesale' 'programmatic improvements' 'by court decree'." *Id.* (quoting *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). And granting relief on these challenges would not "inject[] the judge into day-to-day agency management" or supervision, which is the concern animating the discreteness requirement. *Norton*, 542 U.S. at 67. The Court would simply set aside and enjoin Defendants' policy of imposing these conditions, Defendants' implementation of these conditions in specific grants, and the General Anti-DEI Certification Requirement in OVW's general terms and conditions.

As to finality, Defendants are wrong that Plaintiffs challenge "mere request[s] for funding applications" that "do not determine rights and obligations" or produce "legal consequences." Defs.' Opp'n at 19. Plaintiffs do not challenge the requests for funding applications; they challenge the final decisions OVW has made to impose the Out-of-Scope Funding Conditions on all OVW grants, to impose those conditions on the specific grants for which Plaintiffs have applied or will apply, and to include the General Anti-DEI Certification Requirement in OVW's General Terms and Conditions. Defendants do not dispute that each of

these decisions marks the consummation of the agency's decision making process. The decisions also determine rights and obligations and have legal consequences. They determine the legally binding certifications that Plaintiffs and others must make to be eligible to apply for a grant and to receive grant funds. And they control what grantees may and may not do with grant funds. Moreover, in making any of the certifications, Plaintiffs and their members subject themselves to potential criminal and civil liability under the False Claims Act. "Legal consequences" clearly "flow from" the challenged actions. *Bennett*, 520 U.S. at 177–78.

In similar circumstances, courts have repeatedly concluded that new conditions on federal grants are final agency action, even where the agency had not yet awarded the funds. *City & Cnty. of S.F. v. Sessions*, 349 F. Supp. 3d 924, 961–62 (N.D. Cal. 2018) (concluding that requirement that grantees "certify[] compliance with the federal government's interpretation of" an immigration law was final agency action even though agency had "not yet granted or denied" the challenger's "application or imposed conditions on the grant"); *City of Phila. v. Sessions*, 309 F. Supp. 3d 271, 279–80 (E.D. Pa. 2018) (concluding that policy of requiring grantees to comply with challenged conditions was final agency action even though no award had "yet been granted" to plaintiff); *City of Chi. v. Sessions*, 321 F. Supp. 3d 855, 865–66 (N.D. Ill. 2018) (concluding that "decision to attach the Conditions to the grant" was final agency action even though agency had "not yet reached a final decision on whether to award [the plaintiff] funds"); *Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1032 (N.D. Cal. 2018) (concluding that certification requirements for a grant were final agency action because "[r]eceipt of the grants [wa]s conditioned on certifying compliance," even though plaintiffs had not yet been awarded funding).

While Defendants cite cases purportedly holding that no final agency action exists until an award decision is made, none of those cases involved a challenge to an agency decision to impose conditions on grants. *Contra* Defs.' Opp'n at 19. Rather, one case held that an environmental challenge to a construction project did not involve final agency action where Congress (which is not an agency under the APA) had appropriated money for the project but the EPA had not yet taken any corresponding action. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007). Defendants' second case merely held that a challenge to a construction project was premature where the agency had made only a preliminary assessment of the environmental impact and had not yet decided whether the project would move forward. *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004). And Defendants' (vacated) final case found that an agency did not undertake final agency action in adding new criteria to be considered by an independent panel that reviewed funding applications but did not make the ultimate funding decision. *Planned Parenthood of Wis. v. Azar*, 316 F. Supp. 3d 291 (D.D.C. 2018), *vacated as moot*, 942 F.3d 512 (D.C. Cir. 2019). These cases are inapposite and in no way suggest that Defendants' decision to adopt the Funding Conditions is somehow nonfinal.

Defendants also err in contending that Plaintiffs improperly challenge nonfinal "future" agency action. Defs.' Opp'n at 17. Plaintiffs challenge Funding Conditions that Defendants have already adopted, already required applicants to certify to, and already announced they will impose on all OVW grants. As relevant to future grants not yet announced, Plaintiffs challenge the policy of including these Funding Conditions in all OVW grants—and the inclusion of the General Anti-DEI Certification Requirement in OVW's General Terms and Conditions that is incorporated by reference into all OVW grants. That policy and addition to the General Terms

and Conditions are discrete agency actions, and Plaintiffs may challenge them now rather than wait for each and every future application. To ensure Plaintiffs are protected from these unlawful conditions, they seek an injunction barring Defendants from imposing these Funding Conditions or substantially similar ones in the future. In seeking that relief, Plaintiffs are not challenging those hypothetical future actions but rather seeking relief necessary to prevent the current unlawful conduct from recurring.

> b.  *The Funding Conditions are not committed to agency discretion by law.*

Defendants also err in contending that the Funding Conditions are "committed to agency discretion by law" and thus unreviewable under 5 U.S.C. § 701(a)(2). Defs.' Opp'n at 20–22. The Supreme Court has emphasized that this exception to the strong "presumption of judicial review" under the APA is "quite narrow[]." *Dep't of Com. v. New York*, 588 U.S. 752, 771–772 (2019) (cleaned up). An agency action "is committed to agency discretion by law" only "where a statute is drawn in such broad terms that … the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster*, 486 U.S. at 599–600. Only in those "rare instances" in which there is "no law to apply" is it appropriate to deem an action "committed to agency action" and therefore unreviewable. *Id.* at 599.

The conditions that the federal government attaches to federal funding also are "not one of those areas traditionally committed to agency discretion," like a "decision not to institute enforcement proceedings" or a prosecution, or "a decision by an intelligence agency to terminate an employee in the interest of national security." *Dep't of Com.*, 588 U.S. at 772. Unlike in those contexts, the conditions challenged here do not implicate core areas of Executive discretion under Article II; to the contrary, they are decisions reserved to Congress in the first instance under the Spending Clause. Defendants cite no case holding that the imposition of funding conditions is committed to agency discretion by law.

And there clearly is law to apply for each of Plaintiffs' claims. The First Amendment, the Due Process Clause, the Spending Clause, and the separation of powers have well-worn standards that courts apply every day, and agencies do not have "discretion" to violate these constitutional protections. And even if the grant conditions were committed to agency discretion (and they are not), "[i]t is well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary." *Wong v. Warden*, 171 F.3d 148, 149 (2d Cir. 1999).

As for Plaintiffs' non-constitutional APA claims, OVW's grant programs are governed by statutes setting forth the grants' purposes, eligibility criteria, certification requirements, and other grant conditions, among other things. *See, e.g.*, 34 U.S.C. § 10441(b)–(c) (establishing "[p]urposes for which grants may be used" and purposes for grants to state coalitions); *id.* §§ 12291(b)(2), (5), (9), (10), (15)(C), 20121(b), 20123(h), 20124(g) (establishing various conditions); *id.* §§ 20121(d), 20123(b), 20124(c) (establishing eligibility requirements for certain grants); *id.* §§ 10450(a), 10446(c), 10454(3) 12464(d)(3), (6), 20121(d) (imposing various certification requirements). These provisions provide a "meaningful standard against which to judge the agency's exercise of discretion." *See Webster*, 486 U.S. at 600. In cases involving statutes with similar directives, other courts have held that agencies' imposition of funding conditions was not "committed to agency discretion by law." *See, e.g.*, *King Cnty.*, 2025 WL 1582368, at *12–13 (concluding that agencies' imposition of funding conditions was not committed to agency discretion where statutes contained "specific directives"); *S.F. Unified Sch. Dist. v. AmeriCorps*, No. , – F. Supp. 3d –, 2025 WL 1180729 (N.D. Cal. Apr. 23, 2025) (agency's imposition of funding conditions was not committed to agency discretion where

"detailed statutory objectives provide guidance as to the outer legal bounds of [the agency's] authority").

Defendants' claim that OVW's organic statute gives it unreviewable discretion to administer its grant programs is mistaken. *Contra* Defs.' Opp'n at 21–22. The statute gives the OVW Director, as opposed to the Attorney General, "final authority over all grants, cooperative agreements, and contracts awarded by the Office," 34 U.S.C. § 10442(b), but this just assigns OVW's Director the final authority over OVW's statutory functions. It cannot be read to give the OVW Director carte blanche to do whatever she wants—as that would render countless other provisions a nullity. *Cf. New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 522 (S.D.N.Y. 2019) (housekeeping statutes do not confer substantive agency authority). Similarly, the provision authorizing the OVW Director to "establish[] such rules, regulations, guidelines, and procedures as are necessary to carry out any function of the Office" does not give the Director unreviewable discretion because the functions of the Office are detailed by the statute. For instance, as Defendants themselves point out, Defs.' Opp'n at 21, the OVW Director may ensure that funds are used "only for the specific purposes described in [VAWA]." 34 U.S.C. § 12291(b)(5). But, of course, the statute spells out those purposes and provides a judicially manageable standard against which to judge OVW's decisions.

Defendants also rely on cases that held certain agency funding decisions unreviewable, but those cases are inapposite. Defs.' Opp'n at 20–21. Unlike in *Lincoln v. Vigil*, 508 U.S. 182, 192–93 (1993), where the plaintiff challenged an agency's decision over how to allocate funds from a "lump-sum appropriation" that did not "restrict[] what can be done with those funds," Plaintiffs do not challenge OVW's decision to allocate appropriations to one grant program or another. They challenge the imposition of the Funding Conditions on grant programs that OVW

has chosen to operate. Moreover, unlike in *Lincoln*, all of the grant programs at issue are called for by statutes. *Cf. Lincoln*, 508 U.S. at 193–94 (the statutes did "not so much as mention" the relevant program).

### 2. The Funding Conditions violate the APA.

On the merits, Plaintiffs are likely to prevail on their claim that the Funding Conditions must be set aside on multiple independent grounds: they exceed Defendants' statutory authority; several are contrary to law; and they are arbitrary and capricious (on top of being unconstitutional, as discussed further below).

### a. The Funding Conditions exceed Defendants' statutory authority and several are contrary to law.

To begin, the New Conditions exceed Defendants' statutory authority. Contrary to Defendants' contention, the statutory authorization for the OVW Director to "carry out any function of the office," 34 U.S.C. § 10444(8), does not give the Director free rein to impose any conditions she wants. While OVW can define activities that are out-of-scope, it must do so consistent with the statute, and nothing in the statute permits OVW to leverage VAWA grant funds to advance the Administration's unrelated policy goals—like by requiring people to operate in accordance with the Administration's views on gender or to steer clear of diversity, equity, and inclusion activities that the Administration might deem "discriminatory."

Nor do Defendants have a convincing rejoinder to Plaintiffs' claims that many of the New Conditions conflict with the statute. *See* Pls.' Mot. at 22–25. As Plaintiffs explained in their opening brief and Defendants ignore in their opposition, First Circuit precedent makes clear that imposing conditions to advance unrelated policy priorities conflicts with the "formulaic nature" of a formula grant program under which an agency must award grants in

13

specified amounts to specified recipients once they submit an application meeting congressionally prescribed criteria. *City of Providence v. Barr*, 954 F.3d 23, 38 (1st Cir. 2020).

Plaintiffs also detailed in their opening brief how multiple specific conditions conflict with various statutory provisions. Pls.' Mot. at 23–25. Defendants' sole response is that these conditions actually "impose no new obligations" and instead simply "call attention to recipients' preexisting obligations." Defs.' Opp'n at 22. This strains credulity.

Start with Defendants' attempt to reconcile the "Gender Ideology" Condition—which bars grantees from "[i]nculcating or promoting gender ideology as defined in" the "Gender Ideology" Executive Order—with VAWA's prohibition on discrimination on the basis of gender identity, 34 U.S.C. § 12291(b)(13)(A). Defendants point out that the grant terms advise recipients to "serve all eligible victims as required by statute, regulation, or award condition." Defs.' Opp'n at 23. But even if a recipient can serve a transgender woman (for example), this Condition would appear to require the recipient to treat her as a man—and that would discriminate against her, in violation of VAWA. And while Defendants claim that the Condition does not require grantees to "act as if transgender people are not transgender," Defs.' Opp'n at 23, that claim cannot be squared with the Executive Order's express rejection of the "concept of … gender identity." Exec. Order No. 14168 § 2(f), 90 Fed. Reg. 8615 (Jan. 30, 2025). It is also inconsistent with the government's recent representations in another case that a provision like this would bar a grantee from "refer[ring] to clients by a pronoun other than Mr., Ms., Mrs., or Miss." *S.F. AIDS Found. v. Trump*, --- F. Supp. 3d ----, 2025 WL 1621636, at *17 (N.D. Cal. June 9, 2025).

Defendants fare no better in contending that the Anti-DEI Condition just "reflects VAWA's requirement" that recipients not discriminate in administering VAWA programs.

Defs.' Opp'n at 23. For one, as Plaintiffs have explained, Pls.' Mot. at 36, the Anti-DEI Condition on its face prohibits more than just undertaking "illegal" activities. It prohibits "Promoting or facilitating discriminatory programs or ideology, *including* illegal DEI *or* 'diversity, equity, inclusion, and accessibility' programs that do not advance the policy of equal dignity and respect." NOFO Ex. 1 at 10 (emphases added).

Even if the Anti-DEI conditions were ostensibly limited to illegal activities, it is plainly designed to proscribe far more—to preclude any kind of diversity, equity, or inclusion activity. The Executive Order, and other Administration actions, suggests that the Administration views most diversity, equity, inclusion, and accessibility activities as unlawful, including activities that the federal government has long recognized as appropriate or even promoted in its program administration. *See* Exec. Order 14173 § 3, 90 Fed. Reg. 8633 (Jan. 31, 2025) (revoking executive actions dating back decades; ordering OMB to "[t]erminate all 'diversity,' [and] 'equity' … programs[] or activities"; and ordering OMB to "[e]xcise references to DEI and DEIA principles, under whatever name they may appear," from financial assistance procedures); *see also* Exec. Order 14151 § 2 (ordering agencies to "terminate … all DEI [and] DEIA … offices and positions"; "'equity' actions, initiatives or programs"; and "'equity-related grants or contracts'"). The Administration, moreover, has made clear it will use the False Claims Act as a "weapon" against people who transgress the Administration's new and ill-defined line. Pls.' Mot. at 13 (quoting Blanche Memo); *see also*, Statement of Attorney General Pamela Bondi (May 5, 2025), *available at* https://perma.cc/T76H-25CB ("This Department of Justice will avail itself of every tool at its disposal to protect all Americans from illegal DEI discrimination."); Statement of Attorney General Pamela Bondi (May 19, 2025), *available at*

https://perma.cc/A88E-VPH6 ("Institutions that take federal money only to . . . promote divisive DEI policies are putting their access to federal funds at risk.").

Against that backdrop, Defendants clearly intend for the Anti-DEI Condition to proscribe activities that VAWA specifically authorizes or requires, including to serve or even prioritize services for racial and ethnic minorities or other underserved populations. Pls.' Mot. at 24.

As for the prohibition on "promoting or facilitating the violation of federal immigration laws" (Immigration Enforcement Condition), Defendants say that "[i]t would be nonsensical for Plaintiffs to argue that certain VAWA provisions greenlight immigration law violations." Defs. Opp. 22, 24. Plaintiffs argue no such thing. Plaintiffs do not assert that VAWA permits *Plaintiffs* or the victims they serve to violate immigration laws. The problem is that Funding Conditions prohibit "promoting or facilitating" immigration violations. That prohibition, on its face, could be read as prohibiting Plaintiffs and their members from serving undocumented persons, referring them to legal services, or taking other actions that VAWA calls on grantees to take. Defendants now represent, through a position taken in litigation, that this Condition does not prohibit "*otherwise* lawful uses of grant funds to aid immigrant victims," Defs. Opp. at 23, but the use of "otherwise" does not resolve the prohibition on "promoting or facilitating." Defendants' assurance is cold comfort in any event, given the Administration's stated view that providing undocumented immigrants any "tax-payer funded" support "encourage[s] … illegal immigration." *Fact Sheet: President Donald J. Trump Prevents Illegal Aliens from Obtaining Social Security Act Benefits*, White House (Apr. 15, 2025), https://perma.cc/CW6B-SLL9.

Defendants also claim that the prohibition on "prioritizing illegal aliens … in receiving victim services" (Immigration Priority Condition) is lawful because VAWA does not require prioritizing services "to illegal aliens over United States Citizens." Defs.' Opp'n at 11, 23. But

VAWA expressly calls for programing that specifically targets services for, and thus prioritizes, "underserved" populations, a group Congress defined to include those who face barriers due to their "alienage status." 34 U.S.C. §§ 12291(a)(46), 20123, 12421(3). Indeed, as Defendants note, OVW's regulations implementing VAWA stipulate that a victim's eligibility for services "is not dependent on the victim's immigration status." Opp. 23-24 (quoting 28 C.F.R. § 90.4(c)).

Finally, the Law Enforcement and Immigration Enforcement Condition—which bars programs that "limit the role … of immigration enforcement"—is not saved by the fact that some statutory provisions contemplate grantees cooperating with law enforcement. *Contra Defs.' Opp.* at 24-25. While the statute supports cooperating with law enforcement, it supports other approaches as well. And Defendants have no answer to the point that, to effectively serve the immigrants that VAWA directs grantees to serve, grantees must be able to limit the role of immigration enforcement in their programs within the bounds of existing law.

> ### b. *The Funding Conditions are arbitrary and capricious.*

The new Funding Conditions are also arbitrary and capricious. To withstand arbitrary and capricious review, an agency action must be both "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024). Yet Defendants barely bother to explain how the Funding Conditions meet either requirement, and instead claim that the APA's ordinary requirements for reasoned decisionmaking did not fully apply here. That is incorrect.

*First*, this is not a "contracting" case where a "particularly lenient" standard applies. *Contra* Defs.' Opp'n at 25. This is not a "contracting" case at all. *Supra* I. Rather, it is a challenge to agency decisions to impose new conditions on grants authorized by Congress to carry out public purposes. The two cases Defendants cite for a more lenient standard involve the wholly different context of bid protests challenging government procurement decisions. *See*

*Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282 (Fed. Cir. 2010) (challenging parameters of solicitation for agency financial management system); *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218 (2016) (challenging solicitation for development of military technology). Defendants provide no basis to depart from standard arbitrary and capricious review applicable to agency decisions in this context.

*Second*, the fact that Defendants impose some (but not all) of the Funding Conditions in furtherance of Executive Orders does not render their actions exempt from the APA's reasoned decisionmaking requirements. Defendants make the stunning claim that a federal agency need not "articulate a rationale for its actions—beyond simple compliance with the President's directives." Defs.' Opp'n at 26. For this novel proposition, Defendants cite *Franklin v. Massachusetts*, but that case establishes only that APA review is not available where the *President* takes the relevant final action, because the APA does not "allow review of the President's actions." 505 U.S. 788, 800–01 (1992). Here, the agency took the final actions: OVW adopted the policies and imposed conditions on the awards.

Agencies cannot evade APA review by pointing to Presidential directives in lieu of their own reasoned analysis. On the contrary, courts have made clear that "an agency cannot avert the 'arbitrary and capricious' analysis by simply deferring to the relevant EO." *Woonasquatucket River Watershed Council v. USDA*, No. 1:25-CV-00097, 2025 WL 1116157, at *18 (D.R.I. Apr. 15, 2025), *appeal pending*, No. 25-1428; *see also, e.g.*, *Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 36, 55 (D.D.C. 2025) ("Furthering the President's wishes cannot be a blank check for OMB to do as it pleases."); *Louisiana v. Biden*, 622 F. Supp. 3d 267, 294–95 (E.D. La. 2022) ("A command in an Executive Order does not exempt an agency from the APA's reasoned decision-making requirement.").

Moreover, the Funding Conditions here do not reflect "simple compliance with the President's directives." Defs.' Opp'n 26. Many of the Funding Conditions did not derive from an Executive Order. And for the Anti-DEI Condition, OVW imposed a broader restriction than even the President directed, with OVW prohibiting *any* activities that "promot[e] or facilitat[e] discriminatory programs or ideology," and any "'diversity, equity, inclusion, and accessibility' programs that do not advance the policy of equal dignity and respect," regardless of whether they are "illegal." *See supra* section II.2.a.

Defendants' attempts to defend the Funding Conditions on the merits also fall flat. Defendants do not dispute that they did not address the "serious reliance interests" of grantees and the victims they serve. *See* Defs.' Opp'n 26-27. That alone renders their actions arbitrary and capricious. *See DHS v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020). Nor did Defendants meet the APA's most basic requirement that they had to offer a reasoned explanation for their actions. Defs.' Opp'n 26. Defendants submit a declaration from an OVW official claiming that "OVW undertook a thoughtful and considered process," *id.* (citing ECF No. 19-1, Declaration of Ginger Baran Lyons), but the APA does not require internal thoughts and consideration, it requires reasoned explanations. *See King Cnty.*, 2025 WL 1582368, at *17. Defendants' actions here were not "explained at all." *Id.*

Moreover, an agency may not rely on post-hoc rationalizations that were not provided at the time the decisions were made: "[W]hen reviewing an agency's decision under the arbitrary and capricious standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *City of Taunton, Massachusetts v. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) (quotations omitted). The OVW official's declaration does not purport to be based only on materials in that administrative

record, and so should be disregarded. In any event, the post-hoc declaration fails to show that the agency engaged in reasoned decisionmaking. Nothing in the declaration suggests that the agency acknowledged that the Funding Conditions reflect a change or that it considered the Conditions' impact on the efficacy of OVW grant programs, the reliance interests of grantees (some of whom are entitled to ongoing funding under the coalitions formula grant, *contra* Defs.' Opp'n at 26-27) and the victims they serve, or the difficulty grantees would face in navigating the apparently conflicting commands of the Funding Conditions and the statute.

### B.  Plaintiffs' First Amendment claims are likely to succeed.

The "Gender Ideology" Condition and General Anti-DEI Certification Requirement violate the First Amendment for all the reasons explained in Plaintiffs' opening brief. Pls.' Mot. at 30–33. Defendants' responses fall flat.

*First*, though it is true that the government does not violate the First Amendment by declining to subsidize speech, Defs.' Opp'n at 34, Defendants go further here. For one, the General Anti-DEI Certification Requirement restricts what grantees can do with non-federal funds by requiring them to certify that they "do[] not operate *any* programs" that unlawfully "hav[e] components relating to diversity, equity, and inclusion." General Terms and Conditions § 15 (emphasis added). This unlawfully strays beyond the "scope of the federally funded program." *See* Pls.' Mot. at 33 (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013)).

Further, even when it comes to government subsidies of speech, the First Amendment forbids using federal funding as a sword "aim[ed] at the suppression of dangerous ideas." *NEA v. Finley*, 524 U.S. 569, 587 (1998). The Funding Conditions do just that. *See id.* The "Gender Ideology" Condition violates the First Amendment by defunding all activities "related to the dangerous ideas [the government] has identified." *S.F. AIDS Found.*, 2025 WL 1621636, at *18;

*R.I. Latino Arts v. NEA*, No. 1:25- cv-00079, 2025 WL 1009026, at *13–14 (D.R.I. Apr. 3, 2025) (noting that government cannot "use subsidies to suppress dangerous ideas" and concluding that bar on funding art programs that "promote gender ideology" was "a clear First Amendment violation"). Similarly, the General Anti-DEI Certification Requirement targets speech "relating to diversity, equity, and inclusion." General Terms and Conditions § 15. The Funding Conditions are "being used to impose a disproportionate burden calculated to drive certain ideas or viewpoints from the marketplace" and are therefore unconstitutional. *See R.I. Latino Arts*, 2025 WL 1009026, at *12 (quotations omitted).

*Second*, Defendants object that Plaintiffs' concerns about what the Funding Conditions might prohibit are "speculative"—but they notably give no assurances that any speech would be permitted. Defs.' Opp'n at 34. Quite the contrary, in another recent case involving an identical prohibition on promoting "gender ideology," the government said that this prohibition would bar grantees from "refer[ring] to clients by a pronoun" matching their gender identity. *S.F. AIDS Found.*, 2025 WL 1621636, at *17. And while Defendants point out that OVW will "work with grantees" to figure out what is "outside the permissible scope of authorized grant activity," Defs.' Opp'n at 34, that is not how the First Amendment works. Plaintiffs need not obtain preclearance or clarification from the government before engaging in speech. And it is cold comfort in any event given that the General Anti-DEI Certification Requirement constrains grantees' non-grant-related activity as well and given that other governmental and non-governmental actors outside of OVW's control will ultimately decide how and when to enforce that requirement under the FCA.

*Third*, Defendants further contend that the Funding Conditions actually do nothing new, but that blinks reality. Defs.' Opp'n at 34–35. The Conditions do not merely "prohibit already-

illegal conduct." Defs.' Opp'n at 35. It is not already illegal to "promote Gender Ideology." And while the General Anti-DEI Requirement on its face purports to prohibit only those DEI-related programs "that violate … nondiscrimination laws," context makes clear that the government is using the new General Anti-DEI Certification Requirement to go far beyond what those nondiscrimination laws require. The Administration has made clear its aim is to eradicate "DEI" and "DEIA" completely, and it is using certifications like this—and the accompanying threat of burdensome and potentially ruinous False Claims Act litigation and liability—to chill grantees from engaging in protected diversity- and equity-affirming speech that the Administration disfavors. Pls.' Mot. at 11–14.

Defendants are similarly wrong to claim that the False Claims Act exposure is "nothing new." *Contra* Defs.' Opp'n at 35. What is new is that the Administration now says that engaging in DEI or DEIA is a material term of the government's payment decision, such that FCA liability could attach. Also new is the requirement that grantees certify to that materiality—thereby conceding in advance a key, and otherwise "demanding," element of an FCA claim. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016). On top of that, there is also the Administration's new focus on using the FCA as a "weapon" to combat "illegal" DEI, a commitment of significant new resources to prosecute ideological FCA claims, and a campaign to "strongly encourage" private *qui tam* relators to join in the effort. Pls.' Mot. at 13–14. The General Anti-DEI Certification Requirement is another part of this campaign to scare people from engaging in "DEI" and "DEIA" activities, including speech, that the Administration disfavors.

### C.  Plaintiffs' Fifth Amendment claims are likely to succeed.

The Funding Conditions are unconstitutionally vague in violation of both the Fifth and First Amendments because they impose unclear, ill-defined prohibitions that give Defendants

sweeping discretion over their enforcement. As an initial matter, Defendants do not dispute the merits of Plaintiffs' arguments that the Systemic Framing Condition and the Awareness Campaigns Condition are vague. Pls.' Mot. at 16, 35–36.

Where Defendants do engage with the merits of Plaintiffs' vagueness arguments, their responses are cursory and confused. Defendants are simply wrong that "the grant terms do not target any conduct that is not already illegal under existing laws." Defs.' Opp'n. at 32. Ensuring an undocumented immigrant can live safe from domestic violence and sexual assault is not illegal. Pls.' Mot. at 35. Using someone's preferred pronouns even though they do not correspond with that person's sex assigned at birth is not illegal. Pls.' Mot. at 33. Promoting or facilitating an "ideology" that the government deems "discriminatory" is not illegal. *See supra* I.B; Pls.' Mot. at 36–37. Yet, under the terms of the new conditions, Plaintiffs are understandably concerned that these and similar legal actions will be deemed impermissible uses of funds that could expose them to criminal or civil liability.

Defendants even apply the wrong legal standard to Plaintiffs' vagueness challenge, suggesting that "undeniably opaque" terms are permissible because grants are at issue. Defs.' Opp'n at 32. But Defendants' cited case, *NEA v. Finley*, permitted "opaque" terms only in a statute establishing factors for an agency to consider in its "selections process" for awarding arts funding. 524 U.S. at 588–90. Here, the Funding Conditions include certification requirements that expose grantees to False Claims Act liability if they do not comply. Thus, a higher level of clarity is required. *See id.* at 588 (noting that the same terms that are permissible for "selection criteria" "could raise substantial vagueness concerns" in other contexts). In fact, a particularly demanding fair-notice standard applies here, because the government could subject Plaintiffs to criminal penalties and heavy civil penalties under the FCA. *See Sessions v. Dimaya*, 584 U.S.

23

148, 183 (2018) (Gorsuch, J., concurring); *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997). Further, a "more stringent" standard applies to conditions that chill speech. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). Regardless of the standard, the Funding Conditions fail. Pls.' Mot. at 33–38.

Defendants next frame the Funding Conditions as nothing more than an effort to enforce current anti-discrimination law, Defs.' Opp'n at 32–33, but for the reasons already explained, that is not true for any of the "Out-of-Scope" conditions. *See supra* I.B.; Pls.' Mot. at 11–14. And even for the General Anti-DEI Certification Requirement in the General Terms and Conditions, although Plaintiffs have certified compliance with federal anti-discrimination laws in the past, they have not done so in the face of undefined and unexplained terms in the Funding Conditions, such as what constitutes a program "relating to diversity, equity, and inclusion," General Terms and Conditions § 15, or "illegal DEI" programs under the Administration's new view (NOFO Ex. 1). *See S.F. AIDS Found.*, 2025 WL 1621636, at *21 (the DEI Executive "Order does not define what 'equity' or 'equity-related' means at all. And the government has avoided offering any concrete definition of the term"); *cf. Chi. Women in Trades*, 2025 WL 1114466, at *11 (similar anti-DEI "[p]rovision does not define the term 'DEI' itself, and it does not refer to any other source indicating what the term means as used in the Order—let alone what might make any given 'DEI' program violate Federal anti-discrimination laws").

Defendants' suggestion that terms like "facilitate" and "promote" can be given their common meanings is unconvincing absent understandable definitions for the terms to which they relate. *See* Pls.' Mot. at 36 (arguing that the terms in combination are vague). Plaintiffs are left unsure whether providing survivor assistance services to someone without a lawful immigration status would "facilitate" immigration violations, and whether using preferred pronouns to refer to

a non-binary person would "promote" that person's "gender identity." When read in context, the terms of the Funding Conditions are vague on their face.

Defendants' "threshold" arguments to the contrary likewise are unavailing. *Contra* Defs.' Opp'n at 27–31. *First*, Defendants cite no authority for the proposition that the vagueness doctrine does not apply to grant terms imposed by the government. That would make no sense, especially for grant terms like these that subject grantees to potential civil and even criminal liability if they fail to comply, and the Constitution demands that people have fair notice of what is proscribed before they can face those sorts of consequences. Whether those consequences arise directly from a statute or regulation, or from grant terms that the government has imposed, makes no difference. Unsurprisingly, then, courts have applied the Fifth Amendment's prohibition on vagueness to grant terms. *S.F. AIDS Found.*, 2025 WL 1621636, at *17.

*Second*, contrary to Defendants' suggestion, Defs.' Opp'n at 28, facial vagueness challenges are cognizable where Plaintiffs face potential criminal penalties. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) ("pre-enforcement standing" for vagueness challenge to criminal statute because "plaintiff should not have to expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights" (quotation marks omitted)). Likewise, courts consider pre-enforcement vagueness challenges when plaintiffs allege a burden on First Amendment-protected speech. *See S.F. AIDS Found.*, 2025 WL 1621636, at *22 ("Plaintiffs are likely to succeed on the merits of their Fifth Amendment vagueness challenge—both facial and as-applied."); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Vagueness challenges to statutes *not threatening First Amendment interests* are examined in light of the facts of the case at hand." (emphasis added)). Plaintiffs' facial vagueness challenge is appropriate because the Funding Conditions threaten

draconian consequences for non-compliance—significant civil liability or even criminal penalties. With the threat of these significant penalties, Plaintiffs cannot simply wait and see how the government decides to interpret these vague terms—and a facial challenge is the only effective way to protect their Fifth Amendment rights.

*Third*, Plaintiffs have protected property and liberty interests protected by the Due Process Clause. *Contra* Defs.' Opp'n at 29. The Funding Conditions, by design, put grantees at risk of both criminal and civil False Claims Act liability. Criminal liability and fines threaten protected liberty and property interests. Even if Plaintiffs avoid criminal liability, civil liability exposes them to severe penalties and treble damages. Accepting the Funding Conditions thus puts their property interest in their *own* funds at stake just as it is when any statute or regulation subjects parties to monetary liability for noncompliance. Certainly Plaintiffs have a property interest in their own funds and assets. And some of the OVW grants at issue are formula grants, to which Plaintiffs are entitled by statute. Plaintiffs have a *"legitimate claim of entitlement" to these funds*, which gives rise to a protected property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). *See* Pls.' Mot. at 4–5, 40. Finally, the "Gender Ideology" Condition and General Anti-DEI Certification Requirement violate Plaintiffs' First Amendment rights—that right to speak freely is a liberty interest protected by due process. Courts regularly apply vagueness doctrine in First Amendment cases, even absent an additional protected property interest. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

### D.  Plaintiffs' separation-of-powers claims are likely to succeed.

Defendants do not dispute any of the constitutional principles underlying Plaintiffs' Spending Clause and separation of powers claims. They do not deny that the Constitution places the exclusive power of the purse in Congress, including the power to set the conditions of federal funding under the Spending Clause. And they do not disagree that, as a constitutional matter, the

Executive Branch cannot attach conditions to federal funds absent authorization by Congress. That is dispositive for Plaintiffs' Spending Clause and separation of powers claims, because there can be no genuine dispute that Congress did not prescribe the Funding Conditions and did not specifically authorize Defendants to impose substantive conditions that do not directly implement VAWA, like the Funding Conditions here.

Defendants instead again hide behind non-merits defenses. They claim that *Dalton v. Specter*, 511 U.S. 462, 473 (1994), forecloses the separation of powers claim because "Plaintiffs' separation-of-powers argument is based entirely on the premise that Defendants have allegedly acted in excess of statutory authority." Defs.' Opp'n. 36. But "*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1331 (D.C. Cir. 1996). Here, none of the statutes "entrust a discrete specific decision to the President," and they certainly do not "contain[] no limitations" on the President's exercise of discretion (or even Defendants' discretion).

Moreover, this is not a case where Plaintiffs allege that a statutory violation "is *ipso facto* in violation of the Constitution." *Dalton*, 511 U.S. at 472. Plaintiffs' claim is that the Constitution solely gives Congress the power to prescribe conditions of federal funding under the Spending Clause, and the Executive Branch cannot usurp that power by creating new conditions without authorization from Congress.

## III.    The Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief

Defendants fail to rebut Plaintiffs' showing of imminent, irreparable injury, beginning when the parties' stipulation expires on August 12, 2025. Plaintiffs face a Hobson's choice

between accepting unlawful conditions that impede their ability to provide core services, are at odds with their fundamental missions, and will expose them to potential criminal and civil liability under the FCA, or forgoing essential federal funding they rely on to serve victims of domestic violence and sexual assault.

*First*, Defendants fail to engage with Plaintiffs' argument that "[t]his imminent 'choice itself demonstrates irreparable harm,'" Pls.' Mot. at 38 (*quoting City of Phila. v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017)). *Second*, Defendants are wrong to label these harms as speculative. Defs.' Opp'n at 39. Both to apply for and to receive grant funding, Plaintiffs must certify that they will comply with the government's unlawful restrictions on their expressive conduct. State Coalition Notice of Funding Opportunity Exhibit (NOFO Ex. 1). When some Plaintiffs applied to NOFOs without agreeing to the conditions, OVW rejected the applications, requiring Plaintiffs to resubmit "the full certification as requested without caveats." *See* ECF No. 15-16, Declaration of Lucy Rios, at ¶¶ 31–34. There is nothing speculative about Defendants' intention to enforce these conditions, injuring Plaintiffs and the communities that rely on them.

*Third*, this case does not merely involve a "monetary injury" that could be remedied at final judgment, *contra* Defs.' Opp'n at 39, because Plaintiffs will be unable to fulfill their missions of serving victims of domestic violence and sexual assault once their access to federal funds is cut off. Pls.' Mot. at 40-41 (explaining how loss of funding would interfere with missions); *Massachusetts v. Nat'l Insts. of Health*, 770 F.Supp. 3d 277, 325 (D. Mass. 2025) (interference with organizations' services "is not accurately measurable or adequately compensable by money damages"). And, once the NOFOs close, Defendants will presumably fully fund other grant applicants, leaving no pool of grant money for Plaintiffs to access. *See City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421 (D.C. Cir. 1994).

*Fourth*, Plaintiffs' grave worry about FCA liability is wellfounded. *Contra* Defs.' Opp'n at 40. Defendants have created a task force to prioritize FCA claims against federal grant recipients with DEI programs, an undefined group that may include Plaintiffs, Pls.' Mot at 39; the updated grant terms incorporate agreement with Executive Orders, multiple of which attempt to implement the Administration's policy agenda on gender and diversity; certifying compliance with the Funding Conditions could expose Plaintiffs to criminal liability under the FCA; and claims under the FCA can be brought by third parties in *qui tam* lawsuits—a practice that the DOJ has recently expressly encouraged—so Plaintiffs are not assuaged by the representations about how OVW has enforced terms of VAWA grants in the past.

*Fifth*, Defendants do not dispute that the harm to Plaintiffs' First Amendment rights is irreparable, Pls.' Mot. at 39. *See Soscia Holdings, LLC v. Gray*, 725 F. Supp. 3d 156, 180 (D.R.I. 2024) (argument not developed is waived).

*Finally*, Defendants' suggestion that Plaintiffs cannot demonstrate irreparable injury because the terms are not "illegal," Defs.' Opp'n. at 40, fails for the same reasons that their merits arguments fail.

## IV.    The Balance of the Equities and Public Interest Favors Preliminary Relief

Defendants ignore the substantial services that Plaintiffs provide, directly and indirectly, to survivors of domestic violence and sexual assault and their communities when it argues that an injunction is improper because the government could not recover funds from Plaintiffs after an injunction enters. Defs.' Opp'n at 40. If Plaintiffs cannot access OVW grants on lawful terms now, then Plaintiffs cannot administer direct services such as operating 24/7 hotlines to respond to survivors in crisis, assisting survivors navigate the legal system, and helping survivors find safe housing. ECF No. 15-6, Declaration of Dawn Dalton, at ¶ 11; ECF No. 15-7, Declaration of

Kirsten Faisal, at ¶ 17; ECF No. 15-9, Declaration of Sandra Henriquez, at ¶ 6; ECF No. 15-16, Declaration of Lucy Rios, at ¶ 12; ECF No. 15-20, Declaration of Jonathan Yglesias, at ¶ 10. Receiving those funds years later after this litigation concludes will not enable Plaintiffs to serve those who need their help today. *See Nat'l Insts. of Health*, 770 F.Supp. 3d at 325.

Defendants' observation that the judiciary should respect the Administration's spending priorities, Defs.' Opp'n at 41, fails to advance the public interest where, as here, the government attaches unlawful conditions to lifesaving federal grants.

**V.    Relief Should Extend Broadly Enough To Prevent Any Irreparable Harm.**

Because Plaintiffs are likely to succeed on their APA claims, the Court should preliminarily set aside or stay the new Funding Conditions. There are two mechanisms by which this Court should grant such relief.

*First*, a court may stay challenged agency action pending judicial review when "necessary to prevent irreparable injury." 5 U.S.C. § 705 (courts may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings"). A section 705 stay "operates upon the [agency action] itself by halting or postponing some portion of [it], or by temporarily divesting a rule or policy of enforceability." *Orr v. Trump*, No. 1:25-cv-10313, 2025 WL 1145271, at *23 (D. Mass. Apr. 18, 2025), *appeal pending*, No. 25-1579 (1st Cir.); *accord, e.g.*, *Career Colls. & Schs. of Tex. v. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (holding that "[n]othing in the text of Section 705" suggests that preliminary relief under that provision "needs to be limited" to plaintiffs), *cert. granted on other question*, 145 S. Ct. 1039 (2025). This corresponds to the "normal" scope of final relief in a successful APA challenge, which is "vacatur of the [challenged agency action] and its applicability to all who would have been subject to it."

*Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *25; *see also, e.g., Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

*Second*, as Justice Kavanaugh recently explained, "in cases under the Administrative Procedure Act," courts may "preliminarily 'set aside'" an agency action. *Trump v. CASA*, 145 S. Ct. 2540, 2567 (2025) (Kavanaugh J., concurring). Under 5 U.S.C. § 706(2), courts must set aside agency actions that violate the APA, and it is well established that "when a federal court sets aside an agency action, the federal court vacates that [action]—in much the same way that an appellate court vacates the judgment of a trial court." *Corner Post v. Bd. of the Fed. Resrv. Sys.*, 603 U.S. 799, 830 (Kavanaugh, J., concurring); *see also Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024); Transcript of Oral Argument at 35, United States v. Texas (U.S. Nov. 29, 2022) (No. 22-58) (Roberts, C.J.) (describing vacatur as "established practice under the APA" that "those of us who were on the D.C. Circuit, you know, five times before breakfast, that's what you do in an APA case"). If courts may vacate an agency action upon a final judgment, courts may also provide that relief on an interim basis upon a showing of likelihood of success. *CASA*, 145 S. Ct. at *2567; *see, e.g., Anaria Cabrera v. U.S. Dep't of Labor*, slip op. at 16-17 (D.D.C. July 25, 2025) (setting aside agency action under § 705 and explaining that a § 705 stay "is not a party-specific remedy").

The Supreme Court's recent decision regarding universal injunctions in *Trump v. CASA* is not to the contrary. The Court expressly noted that its holding did not address courts' remedial authority under the APA. 145 S.Ct. at *2554 n.10; *see also id.* at *2567 (Kavanaugh, J., concurring). The Court's holding was purely based on its interpretation of the Judiciary Act of 1789; the Court found that the Act did not provide district courts "equitable authority to issue universal injunctions." *Id.* at *2573. As Justice Kavanaugh has explained, even if "equitable

relief is ordinarily limited to the parties in a specific case[,] in the APA, Congress did in fact depart from that baseline and authorize vacatur." *Corner Post*, 603 U.S. at 838 (Kavanaugh, J., concurring). The APA, in other words, provides statutory authority to block agency action nationwide.

If, however, the Court limits preliminary relief to Plaintiffs, the only way to provide "complete relief" to Plaintiffs is to set aside or enjoin Defendants from enforcing the New Spending Conditions against *any* OVW grant applicant or recipient. Many organizations compete for limited OVW funding, and so excusing some applicants from abiding by the unlawful conditions while others remain subject to them would create an uneven playing field. *Cf. City of Los Angeles v. Sessions*, No. 18-cv-7347, 2019 WL 1957966, at *6 (C.D. Cal. 2019) (concluding that "injunction that bars Defendants from applying [challenged funding conditions] only as to [the plaintiff] does little to ensure an even playing field").

## VI.  The Court Should Deny Defendants' Request For a Stay and Bond

Defendants' request that the Court stay any injunction that it issues pending appeal is premature. The Court has not yet issued any injunction to be stayed, and Defendants have not filed a motion for a stay of that yet-to-come injunction—and could not satisfy the factors in any event. *See* Fed. R. App. P. 8(a).

The Court should exercise its discretion and decline to require Plaintiffs to post a bond. Rule 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount" of a bond, "including the discretion to require no bond at all." *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *24. Where requiring a bond "would have the effect of denying the plaintiffs their right to judicial review of administrative action," no bond is necessary. *Id.*; *see also Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (collecting

32

cases). A bond would have that effect here because the Plaintiffs—all nonprofits—do not have the resources to post a significant bond, and even requiring a modest one would require them to divert resources from their critical programs. At most, the Court should require Plaintiffs post only a nominal bond, because already Plaintiffs "have plenty on the line in this litigation." *See New York v. Kennedy*, No. 25-CV-196-MRD-PAS, 2025 WL 1803260, at *21 (D.R.I. July 1, 2025).

## CONCLUSION

The Court should grant the motion for a preliminary injunction and a stay under § 705.


July 25, 2025                                      Respectfully submitted,

                                                  /s/ Kristin Bateman
                                                  Kristin Bateman (Cal. Bar No. 270913)[+ ^]
                                                  Robin F. Thurston (D.C. Bar No. 1531399)[+]
                                                  Skye L. Perryman (D.C. Bar No. 984573)[+]
                                                  Democracy Forward Foundation
                                                  P.O. Box 34553
                                                  Washington, D.C. 20043
                                                  (202) 448-9090
                                                  kbateman@democracyforward.org
                                                  rthurston@democracyforward.org
                                                  sperryman@democracyforward.org

                                                  /s/ Daniel F. Jacobson
                                                  Daniel F. Jacobson (D.C. Bar No. 1016621)[+]
                                                  Lynn D. Eisenberg (D.C. Bar No. 1017511)[+]
                                                  Nina Cahill (D.C. Bar No. 1735989)[+]
                                                  Kyla M. Snow (OH Bar No. 96662)[+ ^]
                                                  Brian C. Rosen-Shaud (ME Bar No. 006018)*[^]
                                                  Jacobson Lawyers Group PLLC
                                                  1629 K Street NW, Suite 300
                                                  Washington, DC 20006
                                                  (301) 823-1148
                                                  dan@jacobsonlawyersgroup.com

/s/ Amy R. Romero
Amy R. Romero (RI Bar # 8262)
DeLuca, Weizenbaum, Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
Amy@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

/s/ Lynette Labinger
Lynette Labinger (RI Bar No. 1645)
128 Dorrance St., Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com
Cooperating counsel, ACLU Foundation of RI

 /s/ Lauren A. Khouri
Lauren A. Khouri (D.C. Bar No. 10282288)[+]
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
lkhouri@nwlc.org

[+] Admitted *pro hac vice*
\* *Pro hac vice* motion forthcoming
^ Not admitted in the District of Columbia. Practice supervised by members of the D.C. bar.

*Counsel for Plaintiffs*